IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRACEY MCDAVID, ET AL.          *
                                *
            v.                  *   Civil No. JFM-06-92
                                *
GARY J. ARTHUR, ET AL.          *
                             *****

MEMORANDUM

Tracey and Wade McDavid have brought this suit on behalf of their eight year old son, Hunter McDavid, against Howard County.[1]  Hunter has Type I (juvenile onset) diabetes, and his parents are seeking to have him enrolled in an after-school program and two summer programs operated by the County's Department of Recreation and Parks.  The County has agreed to accept Hunter in the programs but attaches conditions that the McDavids find unacceptable.

The McDavids have asserted claims under Title II of the Americans With Disabilities Act ("ADA"), § 504 of the Rehabilitation Act, the due process and equal protection clauses of the 14th Amendment, Articles 19 and 24 of the Maryland Declaration of Rights, and "other various state and common laws of Maryland."  Both parties have filed motions for summary judgment.[2] The McDavids' motion will be denied, and the County's will be granted.

I.

[1]Plaintiffs also name as defendants the Howard County Recreation and Parks Board, Gary Arthur, the Director of the Department, and James Robey, the Howard County Executive. Because these other defendants are being sued only in their official capacities, the action is properly brought only against the County itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[2]Judge William Quarles of this court, sitting as the chambers judge, issued a temporary restraining order in favor of the McDavids when the action was filed.  Subsequently, after a hearing, I refused the extend the TRO and denied the McDavid's motion for a preliminary injunction.

As previously stated, Hunter McDavid is an 8-year old boy with Type 1 (juvenile onset) diabetes.  In June 2005 his parents enrolled him in the Before and After Care Program ("the BAC Program"), a childcare program operated by defendant Howard County Department of Recreation and Parks ("the Department").  The program is licensed and regulated by the Maryland Department of Education.  Co. Mot. for Summ. J. at 5.  Collectively, the Department's before and after school programs serve approximately 2,430 children across 36 different facilities.  *Id.* at 4.  The staff of the BAC Program is made up of part-time employees who may work at a variety of the facilities and are transferred according to the program's needs.  *Id.* at 5.  There are currently no trained medical personnel on staff.  *Id.*

Hunter goes to school and attends, until recently, the afternoon portion of the BAC Program.  After enrolling him in the program, the McDavids informed the staff that Hunter was diabetic and asked them to provide injections of Glucagon and insulin.  *Id.*  The Department provided an initial Accommodation Plan[3] for Hunter's disability, but the McDavids objected to that plan because it did not include the administration of Glucagon or insulin to Hunter.  In addition, the McDavids have indicated that they expect the Department to accept liability for any injuries resulting from Glucagon or insulin injections.  *See* Co. Mot. for Summ. J. at 10 (citing Arthur Affid. at ¶ 18; Vigus Affid. at ¶ 18).  The McDavids have also enrolled Hunter in the

---

[3]The original Accommodation Plan provided for program staff to: 1) assist with and record the results of finger prick tests, 2) permit Hunter to have specific snacks as a result of the testing, 3) contact Ms. McDavid by phone if the results of such testing were not within specified ranges, 4) assist and monitor Hunter's use of a Ketone Stick Test and inform Ms. McDavid of the results of that test, 5) administer Instaglucose paste or Glucose Tablets if necessary, 6) keep Glucagon shots on-site for the use of emergency personnel, and 7) contact designated emergency numbers and 911 if problems arise.  Complaint ex. 2, at 1-2; Def. Opp'n to Mot. for Prelim. Inj. Ex. 1, at 1.

Department's Summer Sunsations Day Camp and its Five Day Camp (together, "the summer programs"). The McDavids argue that the Department must provide both Glucagon and insulin during these summer programs as well.

At my request, after a hearing on a motion for preliminary injunction filed by the McDavids (that I denied), the County submitted a letter discussing its willingness to administer Glucagon. The letter indicated that the County will train and authorize its staff to administer Glucagon although the County disputes that it is legally required to do so. However, the County still disputes that it is legally required to do so. In addition, the County refuses to accept liability for any injuries caused to Hunter by the administration of Glucagon. The County also refuses to administer insulin shots to Hunter, arguing that insulin must be administered by a medical professional and the additional cost in having such a professional available would be too burdensome.

## II.

The parties focus primarily on the ADA and Rehabilitation Act[4] claims. The operative language in these statutes is essentially the same, and therefore the courts apply a similar analysis to claims under both. *Doe v. Univ. of Md. Medical System Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of the two statutes is substantially the same, we apply the same analysis to both"). Under the ADA, "no qualified individual with a disability shall, by

---

[4]The County argues briefly that it should not be subject to § 504 because the Department "receives no federal financial assistance that would subject it to liability under § 504", but acknowledges that § 504 and the ADA impose the same requirements and therefore argues it is entitled to summary judgment under both statutes. Co. Mot. for Summ. J. at 14, n.11 (*citing Huber v. Howard Co.*, 849 F.Supp. 407, 414 (D. Md. 1994), *aff'd without opinion*, 56 F.3d 61 (1995)). Whether or not § 504 applies is academic, because the same results will obtain in either case, and will therefore assume for purposes of this memorandum that it does.

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of such a public entity...". 42 U.S.C. § 12132.  Under § 504 of

Rehabilitation Act, "[n]o otherwise qualified individual with a disability ... shall, solely by

reason of his or her disability, be excluded from the participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial

assistance...".  29 U.S.C. § 794(a)

The Fourth Circuit has explained that under both statutes, a plaintiff must show:

5.      He or she suffers a disability as defined by the statute,

6.      With or without reasonable modifications, he or she is otherwise qualified

to participate in the benefit or employment in question, and

7.      He or she was excluded from that benefit or employment because of the

disability suffered.

*Doe*, 50 F.3d at 1264-64.  The present case turns on the second element: whether the County has

made reasonable modifications to its programs that would allow Hunter to participate in them.

Where, as here, a plaintiff claims that the exclusion results from a failure to make reasonable

accommodations for a disability, the courts look first at whether the accommodation sought is

reasonable and necessary.  *Pathways Psychosocial*, 133 F.Supp.2d at 789.  The plaintiff bears

the burden of showing that it is.  *Id.*  If the plaintiff meets this burden and demonstrates that the

accommodation is  reasonable and necessary, then the defendants may claim as a defense that the

accommodation would fundamentally alter the nature of the public program or cause an undue

financial or administrative burden.  *Id.*; *see also* 28 C.F.R. §35.150(a)(3).

As an initial matter, it is not at all clear that the McDavids' request that the County have

personnel available to administer Glucagon or insulin to Hunter during the BCA Program is necessary.  For several months prior to the preliminary injunction hearing held in this case, the McDavids permitted Hunter to participate in the BAC Program without any Glucagon-trained staffers being present, and this fact self evidently draws into substantial question the McDavids' claim that it would be dangerous for Hunter to participate in the program in the absence of such trained personnel.  Moreover, in support of its motion for summary judgment, the County has submitted the affidavit of Barry Reiner, a physician board certified in the field of pediatric and pediatric endocrinology who holds a teaching position in pediatric endocrinology at the Johns Hopkins Hospital, in which he states, *inter alia*, that "because Hunter McDavid is receiving long acting insulin and short acting insulin, it is grossly inaccurate to claim that not receiving insulin at aftercare will cause the patient to develop diabetic ketoacidosis and to die."

Assuming, however, that the McDavids' demand that the County guarantee that a Glucagon-trained employee be present at Hunter's BAC Program and/or summer programs facility every day is necessary to Hunter's participation in the programs, the demand is unreasonable.  As set forth above, the County has agreed to train employees to administer Glucagon, and it is likely that such employees will be on site most days.  Anticipating, however, that there may be unusual occasions on which a Glucagon trained employee is not present, the County has stated that on those occasions a member of the staff will call the McDavids and advise them that there is no one on-site to give Glucagon to Hunter.  This would allow the McDavids to choose whether or not Hunter should participate that day.  The County also states that the McDavids would be required to release the County and its employees from any liability

5

for "performing testing and administering Glucagon."[5]

These conditions are reasonable on their face, and the McDavid's refusal to accept them is therefore unreasonable.  Moreover, the record is clear that to require the County to guarantee the presence of Glucagon trained staff members at all times, would impose undue financial and administrative burdens on the County and fundamentally alter the nature of the BAC Program and the summer programs facility.  In that regard, the County points out that it would have to train virtually every staff member as to how to administer Glucagon, and that it must pay staff members for the hours spent in training.  Moreover, the members of the staff are part time, and at least some of them might not want to assume the responsibility for administering Glucagon.  As to the question of the administering of insulin, Dr. Reiner states without equivocation in his affidavit that "[t]he administration of insulin by subcutaneous injection is a medical or nursing practice which should not be undertaken by laypersons."  Moreover, the County has also submitted the affidavit of Cheryl Hall, a registered nurse employed as a consultant by the State of Maryland in the licensing branch of the Maryland State Department of Education's Division of Early Childhood Development, Office of Childcare.  Ms. Hall's affidavit establishes that the Office of Childcare "would not advise facilities to administer insulin to a participant in its programs if the programs did not employ a nurse, other medical professionals, or person trained and qualified to administer insulin.  Although the McDavid's assert that there exists a genuine dispute of fact as to whether a layperson may administer insulin, they have produced no evidence

---

[5]The County's position that it is not required to provide Glucagon to children is supported by the Department of Justice's position in its litigation with Kinder Care Learning Centers and La Petite Academy, in which the DOJ is charged with the responsibility of enforcing the ADA as applied to state and local governments, did not require either of these nationwide childcare chains to provide Glucagon to children.

whatsoever to contradict the affidavits of Dr. Reiner and Ms. Hall.  Accordingly, for summary judgment purposes, it is established that the County would have to employ medical professionals in the BAC Program and summer programs in order to guarantee that someone would be present to administer insulin to Hunter.  The employment of such personnel would, self evidently, involve substantial costs, would impose a financial burden on the County, and would fundamentally alter the nature of the programs.

III.

The McDavids allege in their complaint that the County's refusal to make the requested accommodations "screens out or tends to screen out individuals such as Hunter ... unlike those individuals not in Hunter's protected class" and that the effect of doing so was "unlawful[] discrimin[ation] against Hunter based solely on his disability".  Complaint at ¶¶ 42-43.  As such, the McDavids allege a violation of the due process and equal protection clauses of the 14th Amendment.  *Id.* at ¶ 45.

The McDavids have done little to address these claims aside from the bare allegations in their Complaint, but the County has addressed them in its motion for summary judgment nonetheless.  The County argues first that the McDavids cannot pursue a cause of action against it under 42 U.S.C. § 1983, because the remedial scheme provided by the ADA bars a plaintiff from pursuing an action based on the same conduct under § 1983.  Co. Mot. for Summ. J. at 22.  This is not an issue that has been addressed by the Fourth Circuit, but several other Courts of Appeals have held that to allow an ADA plaintiff to bring a claim based on the same conduct under § 1983 is counter to Congress's intent, because it effectively allows a plaintiff two bites at the apple.  *See e.g.*, *Alsbrook v. City of Maumelle, Arkansas*, 184 F.3d 999, 1011 (8th Cir. 1999)

(en banc), *cert. granted in part by Alsbrook v. Arkansas*, 528 U.S. 1146 (2000), *cert. denied by Alsbrook v. Arkansas*, 529 U.S. 1001 (2000) (presuming that Congress intended the ADA scheme to be exclusive because it serves as a "comprehensive remedial scheme"); *Holbrook v. City of Alpharetta, Georgia, et al.*, 122 F.3d 1522, 1531 (11th Cir. 1997) ("To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best").  Within this district, Judge Harvey held similarly in *Walker v. City of Salisbury*.  170 F.Supp.2d 541, 549 (D. Md. 2001) (ruling that a "plaintiff may not ... present in this Court a § 1983 cause of action based on an ADA claim arising by reason of his disability).

Moreover, assuming that the McDavids could pursue a claim under § 1983, it still remains that they have not pled the elements of either a due process violation or an equal protection claim.  With regard to their due process claim, the McDavids have alleged no fundamental right which has been compromised and therefore this claim cannot survive.  Their equal protection claim fails as well.  In *Cleburne*, the Supreme Court affirmed that differential treatment of the disabled is analyzed just as any other economic and social legislation, and should be considered under the deferential rational basis test.  *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 442 (1985).  Under that test, there is no equal protection violation unless the plaintiff can show that there is no rational relation between the differential treatment and a legitimate government interest.  *Id.* at 440.  The states have wide latitude, and such legislation is presumed to be valid.  *Id.*  Here, although the McDavids bear the burden of showing a violation, the County has affirmatively demonstrated that its decision not to provide insulin and to provide Glucagon only on a limited basis is, in fact, rationally related to its interest

in preventing undue costs and burdens on the public.

IV.

The McDavids allege violations of the Maryland Declaration of Rights,[6] which are in substance very similar to the due process and equal protection clauses incorporated through the 14th Amendment.  *See* MD. CONST., Decl. of Rts., art. 19; art. 24.  For the same reasons that the McDavids' due process and equal protection claims fail on the merits, the claims under the Maryland Declaration of Rights fail as well.[7]

For these reasons, plaintiff's motion for summary judgment will be denied, and defendants' motion will be granted.


/s/_____
J. Frederick Motz
United States District Judge


_____

[6]Although the McDavids' Complaint captions their Maryland Declaration of Rights claims as falling under Articles 24 and 26 (Complaint at 15), the text of the Complaint and the McDavids' opposition to the County's motion for summary judgment make it clear that the McDavids in reality allege violations of Articles 19 and 24.

[7]The McDavids also allege in the Complaint that they are asserting claims based upon "other various state and common laws of Maryland."  They have not, however, specified in any manner what those laws are.  If, as the County assumes, the McDavids are attempting to assert a claim for negligence, the claim fails because the County has neither a statutory nor a common law duty of care that includes the administration of Glucagon or insulin.